125-1899-WC J-H Alliance, Inc. Doing Business as the UPS Store Appellant by Joseph Blewett versus the Illinois Workers' Compensation Commission et al., Kathleen Collins-Appley by Peter Lorenz. Counsel Blewett, you may proceed. Thank you. Good morning, Justices. Good morning, Counsel. I'm Joseph Blewett, appearing on behalf of Appellant J-H Alliance, Doing Business as the UPS Store, and I'm respectfully asking this Court to reinstate the Illinois Workers' Compensation Commission's August 11, 2023, decision and specifically their determination of average weekly wage. I'm asking this Court to affirm that Appellee Collins did not prove concurrent employment with Sunline but did prove an average weekly wage of $409.79 with the UPS Store, and I believe that this conclusion can be reached by looking at three main topics, no employer knowledge, no actual earnings, and how this case is distinguishable from those people on temporary layoff or furlough. So in regards to the first point, no employer knowledge, Section 10 of the Illinois Workers' Compensation Act requires that the employer have knowledge of concurrent employment at the time of injury, and this is also elucidated in Bagwell v. the IWCC, which establishes that knowledge of employment by the respondent employer is the dispositive fact in proving concurrent employment. So in this case, Ms. Collins was furloughed from Sunline March 2020, which is seven months before the date of injury with UPS Store. And according to her supervisor at UPS Store, CJ Quist, she said that on October 22, 2020, to her knowledge, Ms. Collins was not performing work for compensation for any other employer besides the UPS Store. It was her understanding that Ms. Collins had lost her job at Sunline Services, and she proceeded to arrange her schedule at the UPS Store, no longer considering the secondary employment with Sunline or with anybody else. What was that premised on, that belief that she was not working anywhere else? Is that the idea, that the schedule had opened up?  Is there anything else you have that supports that point, that Quist didn't have knowledge of another position at that time? I believe that she said that she had discussed with Collins that Collins was on furlough or was no longer working with Sunline, and therefore, she would be available to work full-time or at, you know, whatever the UPS Store needed. Okay. And that's, so you had the fact that she was aware there was a furlough, and the schedule times opened up. That's the strength of your position, that there was no other employment? Nothing else for me to, for us to consider? I just want to clarify the point. It's not a trick question. Yeah, I believe that that is the, that's the main point, and I think that that is, it's important because the act requires the employer knowledge, and so she's saying at the time that she knew and acted upon the fact that Collins was not working anywhere else at the time. Thank you. Are you, I think the word, missing words with regard to what the employer knew. In one breath, you said that the employer knew that she was furloughed, and at the other time you said she knew she was no longer employed by Sunline, and those are two, I would say, legally distinctive and different positions to hold. Is there a requirement that the employer, or that the employee receive a paycheck within so many weeks, or what basis is there if she's furloughed and has, and is the relationship still intact enough that she can go back? As opposed to having been fired, let's say.  I think that they are, you're correct, that they are distinguishable, and I think that some of the confusion comes from Quist's own personal definition of furlough at the time of trial, but I think that, you know, Collins furlough was open-ended with no expectation of a firm return, so sometimes when we talk about furlough, it's seasonal, it's expected every year, teachers, farmers, and they can be expected to return at a certain time after a certain number of weeks or months, even with no firm date, they have an expectation to return. In this case- How are you, counsel, how are you judging no expectation to return in this circumstance? From where do you get that thought? So, sure, from the Jacobs and Flynn cases, they discuss people who do return and have returned and are kind of cyclical in their returning to the employer that they were furloughed from, whereas in this case, there was no particular end date to the furlough, nor was there any expectation that there would be. I don't think that- The distinguishing fact from Flynn and the other case you just mentioned, was it Burroughs?   Yeah. Isn't the distinguishing factor that those were not COVID cases, and this is, isn't that one thing that makes this case different? You're correct that those are not COVID cases, but I don't think that there's any particular carve-out for COVID. People can be furloughed for any kind of reason, economic, government actions, such as in the COVID cases. Spirit Airlines just recently went out of business. I would assume that a lot of their employees were furloughed as they wound down operations, but there's nothing in the plain language of the act or the subsequent relevant case law that carves out an exception for COVID. But just going by what you just said, using Spirit Airlines as an example, if those employees during the wind down were furloughed, they were subject to recall, and until Spirit declared bankruptcy and dissolved, that furlough stance would still be in place, wouldn't it? And then in our case, involving COVID, we're in an industry that was specifically and dramatically impacted by COVID. So even though maybe it normally would have been a couple weeks during a slow time during the year for the airlines to be furloughed under the COVID situation, don't we, shouldn't we extend some grace to her for the fact that the industry was shut down by the pandemic until it reopened? I mean, she was subject to recall no matter what. Justice, thank you. I think you hit on an important point here is that people who are on furlough generally are on furlough for a couple weeks or maybe a couple months, whereas in this case, there was no time period, and in fact, she was asked to return over a year after her last day at Sunline, and she declined to return. And also subject to recall is kind of... I'm sorry. That was the full-time offer to return, and she couldn't return because of the injury, correct? I mean, that was her reasoning. Yes. Summer 2021, she was asked to return. She did say that she couldn't return due to an injury, but I don't think that that's proved by the record. Either way. But let me add, prior to that, though, recall, she had been offered part-time work, correct? And declined that because it was financially, would have cost her more to get there for the four hours of work? Correct. Okay. So she had been offered it. Do you know what the timeframe of that offer was off the top of your head? I apologize. I do not.  Neither do I, so you don't have to apologize, but... But I do think that that's a key component, is that subject to recall, can it be weeks or months? And I think that that's where the intent to return or the expectation of return comes in. Because if you're just subject to recall, at the time of trial in 2022, the Sunline manager said that Collins is still subject to recall. So now we're even farther away from her last day at Sunline, and she's still under subject to recall, even though she's declined a return. And maybe as we sit here today, she's still subject to it, even if she never takes advantage of it. So it's kind of, it's expanding way beyond the employer knowledge of actual earnings at the time of injury that Section 10 requires. So I do agree that some grace can be given to those people on furlough or subject to  But I think that Collins here is asking us to extend it just too far. But what, you know, and I'll leave you alone after this question. With regard to the statement that she could still be on furlough, or she had been on furlough at that year mark when she was offered and declined, her reason for declining at a year, I think her testimony was because she was injured at this employer's location. And any time after that date, can we assume that it'd be the same thing? She's still injured or was injured beyond that time and would not have been able to perform the duties? That's something that we can't assume because it's not in the record either way what her status is. Even right now, I don't know what her workability is. And then also, I think that if we're on the year mark, we can take into consideration the evidence presented, which she said she was injured and couldn't work that job. Right. Okay. Can I ask a question?  Did I understand you to say the employer knew she had other employment, but at the time of the injury, the employer knew she had been furloughed? Is that, did I hear you say that? Yes. There's no dispute that the employer, UPS store, knew that she had the secondary employment with Sunline at the time that she was hired. But at some point between that date and the date of the accident, the employer had understood her to be on furlough, on leave, whatever label we want to affix to it, not working for Sunline for seven months at the time of the accident with UPS store. And I would, I would say that that is a long enough time to sever the connection between concurrent employment and her entitlement to the, including those wages in her AWW. Well, that leads me to my next question, which is if we assume that Flynn sets forth a test, how do you believe that this case, you know, does not need or does, how would you analyze this case under Flynn? The test being, is the relationship sufficiently intact at the time of the injury and would the relationship have played a part in plaintiff's future injury, excuse me, in plaintiff's future earnings, but for the injury? So to your first point, whether this was, the relationship was intact, I would say it's very frayed at this point that no matter what labels people put on it after the fact, for example, do we call this furlough, on leave, you know, whatever, I think that she was basically on a list to, for Sunline to call back, you know, whenever the, whenever the government restrictions were lifted, and then whenever business started picking up, but I don't think that there was an employer-employee relationship between Sunline and Collins at the time of the accident, sufficient to make the definition of concurrent employment. All right, so it wasn't intact, and then the second part, would the relationship have played a part in, according to how I read Flynn, maybe you read it differently, but assuming it's part of the test, then how would you analyze whether the relationship would have played a part in her future earnings, but for the injury? I think that there's a lot of problems with that, but for analysis that I know that one of the circuit court judges had relied on, he said, you know, she would have been working here but for this external thing that I believe that there's no carve out for, and I don't think that that's enough. You can't, well, you know, but for, I would be working at big law, but for my law school with grades, so, you know, I'm not entitled to those earnings, you know, even if I have an excuse, and there's no excuse written into the, there's no exception written into Section 10 and the case law. Flynn doesn't say, but for the layoff, it says, but for the injury, so would the, that's the issue. Okay, and that's something that hasn't been proved in the record, and the trial was in 2022, I don't know that either side has proved that she could or could not return to Sunline based on her injury with UPS. What is the nature of the relationship determination? I mean, who's to make, who's to determine that, the Commission? I believe so, and I believe the Commission had it right the first time because they make the factual determinations. They saw and heard Quist's testimony, they heard the testimony from the supervisor at Sunline and also Collins' testimony, and I think that they came to the right conclusion the first time. It's a multifactorial thing, and I think that they examined all the relevant evidence. Well, multifactorial, how many factors to be considered in Flynn? Two? The timeline of, between Lett being furloughed and returning, the expectation from both parties whether they are going to return, past precedent, whether, you know, this has happened before, or is this part of the job? Thank you. So that's where the court, the circuit court had an issue is the lack of a past precedent and the fact that there's this worldwide epidemic going on, and the employee is furloughed, so there's a real question as to when that person would be called back, and that's the distinction the circuit court seemed to rely upon. I think that people can be furloughed from any employment based on government action. If the government wants to target your industry, your business, whatever, you can be furloughed for any sort of government action, and I put this in that same category. You know, not everything was shut down during COVID, but this particular industry was targeted by government action, but there's no carve out for that in Section 10. So doesn't Flynn and Jacobs actually basically stand for the fact that the furloughed individual, if the relationship remains intact with the company that they are on furlough with, that is what is to be considered? Those cases don't necessarily put any kind of time frame on how long they can be furloughed to be considered still employed. Is that correct? Not a time frame, but they do add time as a thing to consider, which I'm considering here also in Collins. Okay. Okay. Your time has expired initially. You will have time in reply. Mr. Lorenz, you may respond. Justices, Peter Lorenz on behalf of Kate Collins Council. I'm using a different mic today. My mic on my camera is not working. Can you all hear me all right? Yes. Thank you. Okay. Justices, I'd like to start, first of all, with a bit of housecleaning. The commission decision here I'm talking about the original commission decision is not in the appellate record, but is appended to counsel's brief. I suggested a Rule 329 motion to supplement the record, but having looked at the brief and the appendix, it's the full decision. And so I'd stipulate that that's the original commission decision. Now, segueing here then into the arguments and some of the questions on, excuse me, the initial presentation of appellant, I think bear out where I'm going with this. All workers' compensation cases need to be in a certain context. We have here, obviously, a decision of the commission, first originally asserting a concurrent employment setting after seven months, as opposed to all that's ever been reported in this state, two to three weeks between furlough and recall from employment or accident that intervenes with the ability for the individual to return to work. In Jacobs, for instance, the inability to return to work, although was on December 3rd of a year, six months later, he was then cleared to return to his other employment. What I'd like the justices to consider is extraordinary government action in this circumstance. Extraordinary government action in this circumstance that both the dissent and the circuit court, when they first looked at this, said really has to be taken into context here. You know, I just asked the court to take judicial notice, for instance, of an executive order of the governor, generally known as the shelter in place order of March 20th, 2020. The executive order number is executive order 2020. So this is two days before being furloughed from Sunline Services, which we know from the record is an industry that serves an airline. Now just very briefly looking at that shelter in place order, which of course is really long and comprehensive and again, exercising extraordinary government power, when you get to number four, prohibited and permitted travel, prohibited and permitted travel, all travel, including but not limited to travel by automobile, motorcycle, scooter, bicycle, train, plane, except for essential travel and essential activities as defined here in is prohibited. That's very, very broad and extensive contextually in this circumstance. Of course, different than the temporary and one might say, I think the cases do serial temporary layoff for union setting workers like in Jacob, who was a sheet metal worker in the union context, like in Flynn, who was a teamster. This is a non-union shop, but this is a broad, broad effect on a particular industry. Just jumping forward in time to very soon after the accident. Okay, so the furlough occurred on March 22nd of 2020 from Sunline Services. The accident we know occurred on October 22nd of 2020 while working for the UPS store. Again, referring to an executive order, and then I'll get off this, I really will. This is executive order 2020-74 issued December 11th of 2020. The closest I could find the very first sentence of it at this point in the pandemic justices recognizes that over 830,000 people in the state of Illinois have been infected with this disease and 14,000 residents have passed just simple math justices, which is a figure, by the way, taken directly from the first sentence of that order, I assume was a figure that the governor's office got from IDPH that I'm not sure. But what I am sure of is 830,000 people is approximately 15 percent of the state's population. And furthermore, I think it's fair to characterize what occurred as the result of this executive order and the global pandemic generally was that certain industries, the labor market generally, but certain industries within the labor market, travel industries were not just roiled, but really seized, seized as in unable to operate in any way that they were before when the pandemic occurred, when the public authorities took action to address public health concerns that may account in this situation for the length of time between the furlough and the injury. Let me let me articulate that argument a little bit further. Judges, justices, excuse me. Soon after the furlough on March 22nd of 2020, within the first, I think, 10 or 15 pages of the trial record, it's clear that this furloughed employee herself got covid and rather seriously. She did so in the early days of April of 2020. She testified that it was serious and that it lasted over six weeks, which takes us then into to May, mid-May of 2020. And very close to, if I may address one of the justices questions as to a part time offer of employment to a furloughed employer that employee, excuse me, this claimant that occurred sometime on or about July of 2020. Part time in the neighborhood of four hours, perhaps more, judging on the testimony really of Ms. Perino of Sunline, but in no way full time employment and in no way, as both the dissenting opinion at the commission and the circuit court judge pointed out, in excess of the unemployment that she was finally receiving at that period of time in the neighborhood of $290 a week, which, as we also know, as a result of the extraordinary circumstances of the pandemic, had those unemployment compensation benefits not only flooded with those that were applicants, but extended for periods of time so that those in the workforce that found themselves not working could sustain themselves further on this point, justices further on this point. It's clear from the record that the statutory minimum temporary total disability rate was being paid to this claimant of $266.67, which annualized is in the neighborhood of $13,400, barely enough to sustain oneself, that she exhausted her savings, that she borrowed money at an exorbitant rate exceeding 30%, and that she did, and I will say this as credit to the owner of the UPS store, received some sort of calculation of the difference in payment of what she, that is Ms. Quist, calculated to be a shortfall for this employee to sustain herself. I'd only quickly want to bring that up because although at trial credit was an issue, was only an issue, justices, because all credits under the Act are subject to proof, and to Ms. Quist's benefit, although difficult to calculate, she did bring documents the morning of the hearing that we did not challenge any further, that did establish a credit that the respondent is entitled to of approximately $9,300. That's on page 20 of the Commission decision. But the other portion of the argument that counsel for UPS store made in his opening that I'd like to address is relative to, I believe the Commission's misunderstanding here, that there must be earnings at the time of the injury in the concurrent employment setting. And for this, I would direct your attention directly to the Commission decision. If you'll give me just a second, I'll put my finger on it, in which the arbitrator writing adopted in full by the argument focusing on petitioner's employment status with Sunline Services at the time of the injury. Now, justices, it's as clear as could be from both Jacobs and Flynn that there is no requirement that earnings at time of accident are required under both Jacobs and Flynn's definition of concurrent employment. Otherwise, those cases were wrongly decided. They were just wrongly decided. So the Commission in the first instance has applied really a legal standard that, although initially in the circuit court, I argued this was a de novo case, I think that it's manifest weight, and I'll get to that in just a minute. But that appears to be the application of the wrong legal standard. And now I'll switch to manifest weight. The dissent, as well as the circuit court, picked up on it, cited directly to the record, likewise did so in my brief, in which focusing on the had an understanding of some kind as to what furlough meant. And I have to say that if her understanding is, as the record bears out, that you're somewhere between not working and still an employee, that's a pretty good understanding of what furlough means. It's a pretty good understanding of what furlough means. And furthermore, as it relates to the manifest weight issue, and what I believe the decision of the original decision of the Commission did not properly weigh, is that it wasn't until one year, sometime in July of 2021, with the extinguishment of, excuse me, the claimants' unemployment benefits, that there's clear testimony in at least three occasions from C.J. Quist that it was her understanding as of that point, again, post-accident, that point, that Ms. Collins was no longer an employee of Sunline Services, but not on the date of accident. And focusing on the date of accident is the measure of that. And Flynn's invocation of the basic rule that so long as the employment circumstance remains sufficiently intact, that employment still exists between the alleged concurrent employer and the one that the injured worker injured him or herself with. So it's, the Commission decision is both against the manifest weight of the evidence, and did, I believe, flirt with, anyway, applying an improper legal standard to the facts in the case. Now... What about the other problem, with the relationship of plate apart and future earnings, but for the injury? How would you analyze that? Yes, I'll address that. And having reread the dissent in the Flynn case last night several times, I just, I first have to just very quickly make the comment that it sure sounds like the dissenting justice may have even been trying to specially concur, but he really was trying to do, I guess, or I'm sensing what you're groping at, and that is, let's get a better test together here on measuring this. Now, I've laid out the circumstances here under which significant, unusual government action occurred that resulted in a furlough. I believe what the justice is asking is about that second test. What is it that's in evidence here that the employment relationship remains sufficiently intact? Is that correct? Is that the question that the justice is addressing or wanting me to address? Excuse me. Well, that you, you know, really both to the extent you want to do it. Is it intact, sufficiently intact? And then the second part, as I read it, is would the relationship of plate apart and future earnings, the relationship with the furloughed employer? Sure. The answer is it definitely would. And on that point, justice, for all the justices, I would lay out the following. It's, it's, there finally was a stipulation arrived at it as to the average weekly wage of earnings without waiving the defenses with Sunline services of 352 some dollars, which is obviously less than her earnings, as found by the commission, which is the law of the case now here. So that so that we're alleging 750 some dollars together. Now, now, that is a predictor is also a distortion of what may be this particular employee's potential earning capacity. But I'm here suggesting not by way so much of concession, but what is the limit? Council argued this with his direct appeal. What's the limit? Why not two years? Well, I think the limit might be and certainly is you cannot look at earnings beyond the 52 week period prior to the accident whenever it happened. So, so that that's part of the projection of future earnings as to the evidence of the employment relationship still intact on the date of accident. You have the, you have to concede, or I think it needs to be conceded that CJ was under the impression that with the endemic of full bore, this individual is still employed elsewhere, but not many planes are flying. And so I'll do what I can. That's how I take her testimony. And I mean, that very much as a compliment, not just as to her supplemental payment. Time is up. Can you wrap up? But, but also she renewed her badge. She did have to turn a badge in for security purposes. She renewed her badge after the injury. I talked about a security badge here. And she, the testimony, excuse me, of Miss Perino from Sunshine was, although even at time of hearing, she's subject to recall, she can't come back because of the injury. That enough, that's enough. We submit to establish that the employment relationship remains sufficiently intact. This is why the, this is why the judge reversed. Yeah, you could continue on. I could see that, but your time is up. Are there any questions from the court? Thank you. No. Okay. We appreciate your time. Thank you. Mr. Bluett, you may reply. Thank you. I'll just be very brief. Counsel seems to be suggesting in the first part of his argument that because Collins had a low average weekly wage, had to exhaust her savings and take out loans and the other things that he had mentioned, that because of that, this court should substantially increase her average weekly wage because of her work accident. And I don't, I think that the legislature has already considered a low AWW by sending minimums, and I don't think that we need to hear today boost those numbers by using this tenuous connection to former employment at Sunline. He also talked about earnings at the time of accident, but I would argue Collins doesn't need earnings at the time of accident, but she does need, as Section 10 says, concurrent employment at the time of accident, which can be extended using the Flynn and Jacobs definition of furlough. But as we've discussed earlier, I don't believe that Collins' situation comes close to those situations in Flynn and Jacobs regarding the things that we had talked about, the timeframe, the expectation of return, et cetera. So I think that she doesn't need to have earnings, but she does need to have concurrent employment, and I don't believe that concurrent employment has been shown here. And I think to his last point, we talked about the limits of furlough, so that goes to another part. Isn't that basically cutting down the bottom of this? How do you show concurrent employment? That's the issue, right, under the facts of this case. Yes, and I think that by its plain meaning, she was not concurrently employed at Sunline because she hadn't set foot in there for seven months prior to the accident. She told her employer that. The employer redid the schedule based on that information, and I think that if we're talking about the limits of furlough, employer knowledge is important here. Who knows what the timeline – who knows what the limit of furlough is? Days, weeks, months, years. We don't need to decide that here today because the employer knowledge requirement is not met. Chris testified several times. She knew that Collins was no longer working for Sunline for whatever reason, for whatever label, but she was not working, hasn't been working, wasn't working for several months, and was not working at the time of accident. So, therefore, I would argue that based on the employer knowledge requirement of Section 10, the request to include the Sunline wages in this AWW should be denied. So, what knowledge, in addition to the fact that at the time of injury, they're working two jobs, what knowledge, other than the passage of time, does Quist, the employer, have that the other job was somehow terminated or she would never be paid again? What other factors, what other evidence do you have of that? I think that her – Quist's understanding is based on Collins' reporting of the other job and the fact that there is no pay stubs in evidence from any other employer at the time of the accident with UPS. I think it can be proved by a lot of different ways, but in this case, the testimony shows the employer not only didn't know about concurrent employment at the time of the accident, but knew for a fact that she was not working and had not been working. But the employer did have notice and did know that there was this at one point concurrent employment. Is that fair? Yes, that is very fair, and I think that's proved. But at one point, concurrent employment does not extend – maybe it could extend indefinitely, except for it was interrupted by Collins' report that she was no longer working there and is now free to work extra hours at UPS. And with that, I'll rest unless the justices have any further questions. I don't believe there are. Thank you. Thank you, counsel. Thank you. Okay, thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a written disposition will issue.